IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTURO MEDINA, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19-cv-07916 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| BOARD OF EDUCATION | ) |
| OF THE CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arturo Medina, Jr., a former employee of the Board of Education of the City of Chicago ("Board"), alleges that the Board terminated his employment due to his perceived disability. Medina subsequently sued the Board for disability discrimination, asserting a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Now before the Court is Defendant's motion for summary judgment. (Dkt. No. 48.) For the following reasons, Defendant's motion is granted.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1]

---

[1] The Court notes that Medina's response to the Board's statement of facts fails to comply with the Northern District of Illinois's Local Rule 56.1, which governs motions for summary judgment. For instance, Medina often cites his deposition testimony to dispute an asserted fact without stating how the Board's descriptions diverge from his testimony. In responding to an opposing party's statement of facts, Local Rule 56.1(e) requires parties to specify which part of an asserted fact is disputed, cite specific evidentiary material that controverts the fact, and concisely explain how the cited material controverts the asserted fact. Nonetheless, Medina's non-compliance with Local Rule 56.1 does not overly complicate the Court's task in evaluating the Board's motion. As a result, Medina's non-compliance is excused with an admonishment that it not be repeated.

The Board also requests that the Court strike Medina's statement of additional material facts because many of the asserted facts are hearsay, immaterial, argumentative, or conclusory. The Board properly objects in its response when it believes a particular statement is improper and, where it agrees, the Court

I.  **Hiring and Incidents at Clark Elementary School**

Medina began working for the Board in September 2018 as a Special Education Assistant ("SECA") at Peter Cooper Dual Lang Academy ("Cooper Academy"), where he assisted students with learning disabilities. (Pl.'s Resp. to Def.'s Statement of Facts ("PRDSF") ¶ 7, Dkt. No. 53.) While employed at Cooper Academy, Medina applied for the School Clerk I position at Clark Elementary School ("Clark") and accepted the position after an interview with Clark Principal Dr. Natasha Bucker-Pena. (*Id.* ¶¶ 8–11.) The school clerk role entailed clerical, administrative, and payroll support responsibilities; organizing school events; managing shipments; overseeing timesheets; and working with Clark teachers, students, and parents. (*Id.* ¶ 13.) School clerks were also expected to be professional, independent, and self-sufficient workers and refrain from inappropriate behavior. (*Id.* ¶¶ 13, 45.)

On April 22, 2019, Medina started his new position as a probationary employee. (*Id.* ¶¶ 12, 14.) Pena served as his direct supervisor and assigned Clark SECA Angela Prince to train and aid Medina in his transition, including instructing him on how to schedule events, accept and receive packages, and answer the phone and record messages. (*Id.* ¶¶ 2, 17–18.) Before Medina became the school clerk, Prince had been temporarily performing the clerk duties. (*Id.* ¶ 17.) During his first week at Clark, Medina experienced difficulties in trying to complete the administrative tasks that Pena expected him to handle while simultaneously attempting to complete his job training. (PRDSF ¶ 20; Def.'s Statement of Material Facts ("DSMF"), Ex. A, Medina Dep. Tr. Part I 82:13–84:21, Dkt. No. 50-1.)

---

disregards the noncompliant portions of the statement. Therefore, it is unnecessary to strike the entirety of Medina's statement of additional material facts.

In his second week of employment, several incidents occurred between Medina, Prince, and Pena. (PRDSF ¶¶ 23–39.) First, Medina and Prince had a conflict concerning package delivery and acceptance, where neither Medina nor Prince ensured that a package arrived at its proper destination. (*Id.* ¶ 23.) On another occasion, Medina did not notify Pena of a visitor she had been expecting because he thought that Prince would inform Pena. (*Id.* ¶ 24.)

Pena subsequently scheduled a meeting with Medina and Prince on April 29, 2019 to discuss the miscommunication between Medina and Prince and the school's visitor protocols. (*Id.* ¶ 25.) During the meeting, Prince told Medina that "I don't like that you always forget things." (Def.'s Resp. to Pl.'s Statement of Additional Facts ("DRPSAF") ¶ 3, Dkt. No. 57.[2]) Medina then reminded Prince of her role as a SECA and that he was a new employee who learned at a different pace. (PRDSF ¶ 26.) Medina also discussed his experience as a SECA and gave an example of a teacher instructing their student and keeping up with their progress. (DRPSAF ¶ 6.) The Board asserts that Medina then insulted Prince, stating, "I would think you are smarter than you are." (*Id.* ¶ 27.) The Board further contends that Medina next said that a SECA works with mentally disturbed students and "students with disabilities have mental issues." (*Id.*) According to the Board, Pena responded to Medina by stating that he "cannot equate students with disabilities as having mental issues," that Medina's statements were not "okay, and that Medina was making her uncomfortable. (*Id.* ¶ 28.) Medina denied at the time, and continues to deny, that he made the statements about students with disabilities. (*Id.*) During the meeting, when Medina denied making the comment, Pena and Prince told Medina that he did make the statement. (*Id.* ¶ 29.) Prince and

---

[2] Contrary to the Board's assertion, Prince's statement to Medina is not inadmissible hearsay (*See* DRPSAF ¶ 3). Rather, it is an opposing party's statement since the statement is being offered by Medina against the Board and it was made by the Board's employee on a matter within the scope of that relationship. *See* Fed. R. Evid. 801(d)(2)(D).

Pena then began arguing with Medina and yelled at him. (DRPSAF ¶ 11.) Medina also became angry, raised his voice, and accused Pena and Prince of setting him up. (PRDSF ¶ 30.) As a result, Pena ended the meeting and directed Medina and Prince to leave her office. (*Id.*) Following the meeting, Pena notified the school's security guard that she felt unsafe and uncomfortable after her meeting with Medina because of his angry actions. (*Id.* ¶ 31.[3])

On that same day, Pena scheduled another meeting with Medina to review the school's policies and procedures and his responsibilities as the school clerk. (*Id.* ¶ 32.) She told Medina he could not close the door for the meeting because she felt uncomfortable after the day's earlier events. (*Id.* ¶¶ 33–34.) During the meeting, Medina showed Pena a copy of the Chicago Public Schools' ("CPS") job description for the SECA position and highlighted portions of the document to "clarify" his earlier remarks. (*Id.* ¶¶ 33–34.) One highlighted section stated that one of a SECA's essential functions is to assist special education teachers in "reinforcing efforts with children with various disabilities, including physical disabilities, visual and hearing impairments, learning disabilities, behavioral disorders, emotional impairments, and mental impairments." (*Id.*) Medina asserts that his alleged inappropriate comment was consistent with the SECA job description. (DRPSAF ¶ 15.) The Board contends that the comment was inconsistent with the description as the description does not state that "students with disabilities have mental issues." (*Id.*)

Upon Medina showing her the job description, Pena reminded Medina about the purpose of the meeting, but Medina refused to discuss the school's policies and procedures and his job responsibilities. (PRDSF ¶ 34.) Pena did not allow Medina to clarify his earlier remarks.

---

[3] Contrary to Medina's objection that Pena's statement to the security guard is inadmissible hearsay (PRDSF ¶ 31), the statement is likely admissible under the state of mind exception, which allows for the admission of statements of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional condition. *See* Fed. R. Evid. 803(3).

(DRPSAF ¶ 16.) And instead, she asked Medina to leave her office. (PRDSF ¶ 35.) While exiting Pena's office, Medina told Pena that he wanted to have a meeting with her and his union representative; Pena agreed. (*Id*.)

Pena later emailed Medina, requesting another meeting with him on the following day to discuss Clark policies and procedures. (*Id.* ¶ 36.) In his reply email, Medina asked for a union representative from the Chicago Teachers Union to attend the meeting with him and discuss the April 29 incident. (*Id.*) Pena replied to Medina's email, agreeing that a union representative and another administrator could attend the meeting; she also stated that she was "taken aback" by Medina's earlier behavior and had concerns regarding his comment about students with disabilities having mental issues, his subsequent denial of the statement, and his accusations that she and Prince were setting him up. (*Id.* ¶¶ 36–37.) Later in the day, Pena emailed Medina asking for clarification of his request for the presence of the union representative because the purpose of the meeting was to provide "guidance and coaching." (*Id.* ¶ 38.) Medina did not respond to Pena's email since he had already left work. (*Id.* ¶ 39.)

## II. Termination and Disability Discrimination Claim

That evening, Medina emailed Pena, informing her that he would be taking a sick day on April 30, 2019. (*Id.* ¶ 40.) Pena called Medina on April 30 when he did not show up for work, but he did not respond to her call. (*Id.* ¶ 41.) As a result, Pena emailed Mary Ernesti, the Executive Director of the Board's Office of Employee Engagement, summarizing Medina's conduct during the April 29 incident and stating that she had concerns about Medina's behavior. (*Id.* ¶ 43.) Ernesti replied to Pena's email, stating that the Board could terminate Medina since he was a probationary employee. (*Id.* ¶ 48.)

5

Also on April 30, Medina informed Pena that he would be absent from work on May 1 because he was still sick. (*Id.* ¶ 50.) On May 1, Pena emailed Ernesti, noting that Medina was still absent from work and directing Ernesti to proceed with the termination process for Medina. (*Id.* ¶ 49.) Later that day, the Board notified Medina that they had terminated his employment effective May 2 and placed a "do not hire" designation in his file, and that he was now ineligible for employment at CPS. (*Id.* ¶ 52.) Ernesti processed Medina's termination based on (1) Pena's recommendation, (2) Medina's alleged comment regarding students with disabilities, and (3) Medina's behavior during his meeting with Pena and Prince. (*Id.* ¶ 54.)

Medina suffers from three medical conditions: obsessive compulsive disorder, major depressive disorder, and generalized anxiety disorder. (*Id.* ¶ 56.) But he does not believe that his mental condition substantially limits a major life activity, such as working. (*Id.* ¶ 57.) While employed by the Board, Medina never disclosed his medical conditions to the Board or Pena. (*Id.* ¶¶ 58–60.) Additionally, Pena did not discuss with any Board employee whether she thought Medina had any medical conditions that impacted his working ability. (*Id.* ¶ 61.) And Board employees never joked or made derogatory comments about his medical conditions. (*Id.* ¶ 65.) Medina claims that he attempted to disclose his psychiatric conditions to Pena and Prince during the first April 29 meeting, which is why he discussed his experience as a SECA and commented on students with disabilities, but Pena would not let him finish or clarify his comments. (DRPSAF ¶¶ 5, 8–9.)

Following his termination, Medina filed a charge of discrimination with the Equal Employment Opportunity Commission, which issued a right to sue letter. Medina then filed this lawsuit against the Board, alleging that the Board, acting through Pena, regarded him as disabled and discriminated against him in violation of the ADA.

**DISCUSSION**

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While facts and reasonable inferences are construed in the light most favorable to the non-moving party, "our favor . . . does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotation marks omitted). The Court grants summary judgment when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

The ADA prohibits employers from discriminating against a qualified individual on the basis of disability in the discharge of employees and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). To succeed on a claim of discrimination under the ADA, Medina must prove that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) the Board took an adverse employment action against him on the basis of his disability. *See Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020). The ADA defines a disability as (a) a physical or mental impairment that substantially limits at least one major life activity; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Here,

Medina does not claim that he is actually disabled within the meaning of the ADA; rather, he asserts that the Board regarded him as disabled and unlawfully discriminated against him by terminating him based on his perceived disability.

### I. "Regarded as" Disabled

The Court first considered whether there is a genuine issue of fact as to whether the Board regarded Medina as disabled. Specifically, Medina claims that his commentary about students with disabilities and his past experience as a SECA, in the context of a discussion about his job performance, made Pena aware of his psychiatric conditions.

To prevail on a claim under the "regarded as" prong of the ADA, Medina must show that the Board "believed, rightly or wrongly, that he had an impairment that substantially limited one or more major life activities." *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 195–97 (7th Cir. 2011) (finding that the plaintiff's employer regarded him as disabled when they discovered his fear of heights, restricted him from construction tasks that could even be performed on the ground, and forced him to take non-occupational disability leave). An employer's mere knowledge of the plaintiff's impairment is insufficient; the plaintiff must show that the employer knew of the impairment and believed that it substantially limited the plaintiff in a major life activity. *See Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 523 (7th Cir. 2009); *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 643 (7th Cir. 2005); *see also Silk v. Bd. of Trs., Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 709 (7th Cir. 2015) (concluding that the plaintiff could not establish that his employer regarded him as disabled when the employer was unaware of the plaintiff's heart condition and recent bypass surgery).

Work qualifies as a major life activity under the ADA. *See Miller*, 643 F.3d at 195. But the employer must have believed that the plaintiff's impairment limited their ability to perform a

8

class or broad range of jobs, not just a specific job. *Hanson v. Caterpillar, Inc.*, 688 F.3d 816, 819 (7th Cir. 2012); *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 749–50 (7th Cir. 2011) (finding that the employer viewed the plaintiff's medical restrictions as only precluding her from being a general laborer at the plant but not a variety of other jobs).

Here, there is simply not enough evidence for a reasonable jury to conclude that the Board regarded Medina as disabled. It is undisputed that Medina never disclosed his psychiatric conditions to Board employees, Pena never made jokes or derogatory comments about Medina's conditions, and Pena never discussed with any Board employee whether she believed that Medina had any physical or mental impairments that impacted his working ability. The emails between Ernesti and Pena regarding Medina's termination also do not mention any perceived impairments. Instead, Pena describes her concerns about Medina's behavior during their meeting, including Medina making the alleged comment about students with disabilities having mental issues, becoming argumentative when he denied making that statement, and accusing her of setting him up. Even if Medina was attempting to disclose his psychiatric conditions to Pena during their meeting, there is no basis from which to conclude that Pena understood him to be doing so. It would require a substantial leap in logic—one supported only by speculation—to conclude that Pena somehow became aware of Medina's impairments through his discussion about students with disabilities, his experience as SECA, and how he learned at a different pace. Without showing the Board's awareness or belief of an impairment when they terminated Medina, he cannot succeed in proving that the Board regarded him as disabled.

Even if Medina had adduced sufficient evidence to support a finding that the Board believed he had a mental impairment, Medina still would not have provided any evidence to support that the Board believed his impairment substantially limited him in a major life activity,

9

such as work. For the major life activity of work, Medina would have to offer evidence sufficient to show that the Board believed his impairment substantially limited his ability to perform a broad range of jobs—not only the school clerk position—and he has not done so.

**II.     Causation**

Even if Medina had produced sufficient evidence from which a jury could find that the Board perceived him as disabled, Medina has not provided sufficient evidence for a reasonable juror to conclude that the Board terminated him on the basis of his disability. For a discriminatory discharge claim, a plaintiff must prove that their employer would not have fired them "but for" their actual or perceived disability; proof of mixed motives is inadequate. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962–63 (7th Cir. 2010) (noting that the employer would have terminated the plaintiff regardless of their improper consideration of her perceived disability); *see McCann v. Badger Mining Corp.*, 965 F.3d 578, 589 (7th Cir. 2020).[4] "But for" causation can be proven by direct or circumstantial evidence, including suspicious timing, evidence that similarly situated employees outside of the protected group regularly received better treatment, and evidence that the employer offered a pretextual reason for its actions. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). In addition to the *McDonnell Douglas* burden-shifting framework for employment discrimination cases,[5] the Seventh Circuit has also advised that courts should consider the evidence as a whole and ask "'whether the evidence would permit a reasonable factfinder to conclude that . . . [a] proscribed factor caused the discharge.'" *Id.* at 504 (quoting *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

---

[4] The Seventh Circuit has noted that it is an open question whether the ADA's language change in 2008 from "because of disability" to "on the basis of disability" changes the "but for" causation standard; but it continues to apply this standard in the absence of parties arguing for another. *See Kurtzhals,* 969 F.3d at 728; *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017).

[5] *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Here, Medina argues that the Board's stated reasons for firing him were pretextual. In determining whether an employer's reason for an adverse employment action was pretextual, the key "question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the action." *Kurtzhals*, 969 F.3d at 730 (*quoting Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019)); *see also Brooks v. Avancez*, 39 F.4th 424, 435–36 (7th Cir. 2022) (stating that it is irrelevant whether the employer should have perceived the plaintiff's words as a threat or whether they even occurred; it only mattered whether the employer honestly believed the plaintiff made threats). A finding of pretext demands more than just faulty reasoning or mistaken judgment on the employer's part; instead, the plaintiff must show that the employer's given reason is a lie. *McCann*, 965 F.3d at 589. "Shifting and inconsistent explanations" can support a pretext determination. *Id.* at 589–90; *see Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 491 (7th Cir. 2020).

Medina cites *de Lima Silva v. Department of Corrections*, 917 F.3d 546 (7th Cir. 2019), for the proposition that pretext can be established by the plaintiff identifying weaknesses and inconsistencies in the employer's reasons for termination. In *de Lima Silva*, the Seventh Circuit held that a reasonable jury could find that the employer's reason for firing the plaintiff was pretextual because the employer's reasons shifted over time, including adding new rationales at subsequent hearings and depositions. *Id.* at 561–63. Here, Medina claims that he has identified inconsistencies and weaknesses in the Board's reasons for his termination; specifically, he emphasizes that the alleged comment he made about students with disabilities having mental issues was consistent with the SECA job description, and he attempted to explain this consistency to Pena. Essentially, Medina contends that the Board's stated reason for terminating him cannot

11

be a legitimate reason since the alleged comment was not inappropriate or offensive if it was consistent with the job description.

First, *de Lima Silva* is inapposite because the Board's stated reasons for firing Medina have not changed. In Pena's initial email to Ernesti, which started Medina's termination process, Pena expressed concerns about Medina's behavior in the first April 29 meeting. For instance, Pena stated that Medina said students with disabilities have mental issues, that he became argumentative when questioned about his comment, and that he accused her and Prince of setting him up. Likewise, Medina's employee disciplinary record indicates that the Board processed his termination as due to substantiated charges of using verbally abusive language and insubordination. (DSMF, Ex. Q, Employee Disciplinary Action Coding, Dkt. No. 50-1.) At the summary judgment stage, the Board continues to maintain these rationales, asserting that the Board terminated Medina because of his inappropriate comment and unprofessional behavior toward Pena and Prince.

Although there is a disputed issue of fact regarding whether Medina actually stated that students with disabilities have mental issues, it matters only whether the Board honestly believed that Medina's comment was an inappropriate remark. And there is ample evidence that the Board honestly believed Medina made a disparaging comment about students with mental disabilities. For example, Pena and Prince accused Medina of making the statement during their meeting, Pena told Medina that he should not equate students with disabilities as having mental issues, Pena later emailed Ernesti about Pena's alleged comment, and Medina's employment record indicates charges of use of verbally abusive language. On the other hand, Medina offers no evidence that the Board actually had some other reason for terminating him, other than his own

12

speculation. Therefore, the Court cannot find that the Board's stated reasons for terminating Medina were pretextual.

Assuming that Medina did not make the allegedly inappropriate comment (as the Court is required to draw all reasonable inferences in his favor), Medina still cannot show that a perceived disability was the "but for" cause of his termination. In addition to the charge of verbally abusive language, the Board also stated that it fired Medina for his insubordination and unprofessional behavior toward Pena and Prince. It is undisputed that Medina raised his voice at Pena and Prince and accused them of setting him up when they told him that he did make the alleged statement. Furthermore, it is undisputed that Medina refused to discuss Clark's policies and procedures and his responsibilities as the school clerk during his second meeting on April 29 with Pena. In sum, the Board had other undisputed reasons for terminating Medina.

### III. Essential Functions

As explained above, the Board is entitled to summary judgment on Medina's ADA claim because there is no genuine dispute of fact as to whether the Board perceived Medina as disabled or, even if they did, whether the perceived disability was the "but-for" cause of his termination. Nonetheless, the Court will continue on to consider the Board's argument that there is no genuine dispute of material fact concerning whether Medina could perform the essential functions of the school clerk position. On this point, the Court disagrees with Board.

To assess whether a job function is essential, courts consider the employer's judgment, written job descriptions, the amount of time the employee spends performing that function, the experiences of past and current employees, and the consequences of not requiring the employee to perform that function. *Conners v. Wilkie*, 984 F.3d 1255, 1261 (7th Cir. 2021); *see also Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569–70 (7th Cir. 2019). The ADA does not protect "disabled

13

individuals from adverse employment actions if the individual, for reasons unrelated to his disability (such as a poor work ethic, carelessness, bad attitude, insubordination or unprofessional demeanor) . . . is unable to perform the job's essential functions." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 863 (7th Cir. 2005) (citations omitted).

In this case, the Board describes the duties of the school clerk position as clerical, administrative, and payroll support responsibilities; organizing school events; managing shipments; overseeing timesheets; and working with teachers, students, and parents. (PRDSF ¶ 13.) School clerks are also expected to be professional, independent, and self-sufficient workers and to refrain from inappropriate behavior. The Board contends that Medina cannot show that he was qualified to perform the essential functions of the school clerk position because he had difficulty completing administrative tasks, made an inappropriate comment, and exhibited unprofessional behavior during his meeting with Pena and Prince. Medina, of course, denies making the allegedly inappropriate comment. He also disputes the Board's characterization of his testimony about the difficulties he experienced in trying to complete his job training and administrative tasks. Indeed, the Court agrees that the Board mischaracterizes Medina's testimony. Medina does state that he had difficulty completing administrative tasks; however, he also mentions that this difficulty stemmed from technical issues with the administrative systems, a staff shortage, and the concurrent need to finish his job training. (*See* Medina Dep. Tr. Part I 82:13–84:21.) Viewing the evidence in the light most favorable to Medina, a reasonable jury could find that Medina could perform the essential functions of the school clerk position.

But despite the existence of a dispute of fact regarding Medina's ability to perform the essential duties of the school clerk position, Medina's ADA discrimination claim cannot survive summary judgment. There is simply insufficient evidence to support a finding that the Board

regarded Medina as disabled, and that Medina's perceived disability was the "but for" cause of his termination. Accordingly, summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 48) is granted.

ENTERED:

Dated: March 31, 2023

Andrea R. Wood
United States District Judge